# In the United States Court of Federal Claims

No. 18-801L
(Filed: March 15, 2019)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
                                          \*

| | |
|---|---|
| **ALLAN BROWN, and,** | \* |
| **BROWN SOD FARM, LLC** | \*   Motion to Dismiss; Subject Matter Jurisdiction; |
| | \*   Stabilization Doctrine; Continuing Claims |
| Plaintiffs, | \*   Doctrine; *Boling v. United States*; Accrual |
| | \* |
| v. | \* |
| | \* |
| **THE UNITED STATES,** | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER AND OPINION

**DAMICH**, Senior Judge.

On June 6, 2018, Plaintiffs, Allan Brown and Brown Sod Farm, LLC, filed a Complaint seeking compensation for a Fifth Amendment taking, alleging that an auxiliary spillway at the Lake Oologah Dam in Rogers County, Oklahoma, is responsible for erosion of their property.

On October 5, 2018, Defendant, the United States (the "Government"), moved to dismiss under Rule 12(b)(1) of the Rules of the Court of Federal Claims, contending that Plaintiffs' claim is barred by the running of the statute of limitations because Plaintiffs possessed actual knowledge of the erosion no later than 1990.  Def.'s Mot. to Dismiss, ECF No. 8 ("Def.'s Mot").

On December 3, 2018, Plaintiffs responded, arguing that their claim did not accrue until 2015 when they needed to change business operations due to the erosion, and seeking application of the continuing claims doctrine.  Pls.' Resp., ECF No. 11.  On December 17, 2018, Defendant replied.  Def.'s Reply, ECF No. 12.  This matter is now fully briefed and ripe for decision.

For the reasons set forth below, the Government's Motion to Dismiss is hereby **DENIED**.

## I.    FACTS

Plaintiffs Allan Brown and Brown Sod Farm, LLC, own property along the Verdigris River, south of Lake Oologah in Rogers County, Oklahoma.  In 1974, the Army Corps of Engineers (the "Corps") completed construction of the Lake Oologah Dam, which includes an auxiliary spillway that releases flood waters from the lake.  When in use, the outflow from the

spillway discharges water and sediment downstream from Lake Oologah into the Verdigris River, directly across from Plaintiffs' property. Def.'s Mot. at 3. Upon its initial use in October 1986, the spillway resulted in the erosion of the banks of the Verdigris River.[1] Def.'s Mot. at 3. Since then, the spillway has been operated seventeen times.[2] Def.'s Mot. at 3.

In 1990, Allan Brown complained to the Corps about the erosion of the Sod Farm. *See* Def.'s Mot. at 5, Ex. E (Letter to Honorable Dan Bored, Congress of the U.S., from Anthony Funkhouser, USACE, May 26, 2009). Thereafter, Mr. Brown contacted the Corps and Congressional representatives in 2003, 2004, 2007, 2008, 2009, 2011, 2015, and 2016 concerning the erosion. Def.'s Mot. at 5.

In response to Mr. Brown's various inquiries, the Corps continually maintained that it "will not—and cannot—mitigate the erosion," explaining that "there is no program that authorizes the Corps to directly address Mr. Brown's situation." Def.'s Mot. at 5–6.

In 2015, the erosion rendered Plaintiffs' existing center-pivot irrigation system inoperable. Pls.' Resp. at 4–5. Plaintiffs expended approximately $10,000 on new irrigation equipment to continue business operations and approximately $15,000 on riprap to prevent further erosion.[3] Pls.' Resp. at 2, 4–5.

On June 6, 2018, Plaintiffs filed suit, alleging that over eight acres of land has been lost due to erosion and seeking compensation under the Fifth Amendment. Compl. at 5–6.

## II.    STANDARD OF REVIEW

This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When faced with a motion to dismiss for lack of subject matter jurisdiction, pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1), a court must assume that all undisputed facts alleged in the complaint are true, and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

---

[1] The Government states: "The United States does not concede that the operation of the auxiliary spillway caused any erosion on Plaintiffs' property. Bank erosion is a normal process on the Verdigris River. For purposes of this motion only, however, the United States has assumed the project caused the erosion on the subject property." Def.'s Mot. at 3 n.1.

[2] The spillway was operated on the following occasions: May 1991, Nov. 1992–Jan. 1993, May–June 1993, April–May 1994, May–June 1995, April 1997, May–June 1999, June–July 2000, May–Aug. 2007, May–July 2008, Mar.–June 2012, June 2013, Aug.–Sept. 2013, Oct.–Nov. 2014, Apr.–Aug. 2015, Oct. 2016, and May–June 2017. Def.'s Mot. at 3.

[3] In their Complaint, Plaintiffs claim to have spent $20,000 on riprap. *See* Compl. at 4.

The movant, however, may challenge the truth of any facts upon which jurisdiction depends. *See Raymark Indus. v. United States*, 15 Cl. Ct. 334, 338 (Cl. Ct. 1988). If it does, the plaintiff must come forward with a *prima facie* showing of jurisdiction. *Id.* The plaintiff cannot rely only on its allegations. *See Hornback v. United States*, 52 Fed. Cl. 374, 377 (Fed. Cl. 2002). Moreover, the Court may look to evidence outside of the pleadings in order to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991), *aff'd in relevant part*, *Martinez v. United States*, 281 F.3d 1376 (Fed. Cir. 2002).

## III.   DISCUSSION

The Government argues that the Court lacks subject matter jurisdiction to hear Plaintiffs' claim due to the running of the statute of limitations under 28 U.S.C. § 2501. Def.'s Mot. at 1–2. According to the Government, Plaintiffs' claim accrued in 1990 when they had "actual knowledge of the permanent erosion occurring on their property" and was informed that "[t]he Corps refused to remediate the erosion." Def.'s Mot. at 2.

Plaintiffs, on the other hand, contend that although "it became evident to Plaintiff Allen Brown that there was a hole in the riverbank of his property" in 1986, their claim did not accrue until 2015, when the erosion progressed to the point that business operations needed to be changed and measures taken to prevent further erosion. Pls.' Resp. at 2. This, according to Plaintiffs, was the first time that the erosion disrupted or interfered with Plaintiffs' business operations and the first time "the extent of the damage became foreseeable." Pls.' Resp. at 3–4. In addition, Plaintiffs argue that the continuing claims doctrine should extend their claim because each use of the auxiliary spillway constitutes a new breach of duty by the Government. Pls.' Resp. at 5–6.

At Oral Argument, Plaintiffs clarified that they did not intend to make any claim prior to 2015 and that their claim for erosion damages was based only on the release of water in the auxiliary spillway in 2015 and in subsequent years, all of which are separate takings. In addition, they argued that the erosion of Plaintiffs' land was not "substantial" until 2015. Defendant maintained its position that the erosion began with the construction of the dam (with its auxiliary spillway) and the Plaintiffs' claimed accrued when they had actual knowledge of the erosion and that it would be permanent.

The Defendant's Motion to Dismiss is denied. As explained below, the Court accepts Plaintiffs' argument based on the continuing claims doctrine that each release of water through the auxiliary spillway was the cause of a discreet amount of erosion of Plaintiffs' property. Therefore, Plaintiffs' claim is within the period of the statute of limitations. In addition, if this Court were to apply the stabilization doctrine, this Court would deny the motion because it would require fact-finding in order to determine when stabilization occurred.

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides the Court of Federal Claims with jurisdiction over takings claims against the Government. Under 28 U.S.C. § 2501, any claim brought pursuant to the Tucker Act must be filed within six years of when the cause of action

accrued.  Generally, a claim alleging a Fifth Amendment taking "accrues when the act that constitutes the taking occurs."  *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009).

There are two doctrines at play in deciding this motion: the continuing claims doctrine and the stabilization doctrine.  The continuing claims doctrine extends the general rule that a taking claim accrues at the time that the taking occurs by addressing the possibility of a series of discreet takings over a period of time.  The stabilization doctrine contemplates one act of taking, the effects of which are only known over time.  In the case of a gradual physical process such as erosion, the law does not require that the owner sue when the first clod of earth is dislodged.  Sensibly, the law starts the running of the statute of limitations "when the environmental damage has made such substantial inroads into the property that the permanent nature of the taking is evident and the extent of the damage is foreseeable."  *Boling v. United States*, 220 F.3d 1365, 1372 (Fed. Cir. 2000).  That is, the law waits until the situation has "stabilized."

According to the Defendant, the one act of taking that brings the stabilization theory into play in this case is the construction of the dam and the spillway.  But for Plaintiffs, each release of water through the spillway causes a discreet amount of erosion damage.  At oral argument, Plaintiffs stated that they are prepared to quantify the extent of erosion just from the release of water in 2015 to the present.[4]

*Boling v. United States*, 220 F.3d 1365 (Fed. Cir. 2000), is the controlling case for purposes of this motion.  *Boling* discussed both the stabilization doctrine and the continuing claims doctrine.  Importantly for this decision, the Federal Circuit stated "we…decline…to extend the continuing claims doctrine into environmental takings."  *Id.* at 1373.  This statement, taken literally and out of context, would seem to preclude the Plaintiffs' case based on the continuing claims doctrine.  But farther on, in the same opinion, the court stated, "[T]he continuing claims doctrine…does not apply in cases where a single governmental action causes a series of deleterious effects, even though those effects may extend long after the initial governmental breach."  *Id.*  In *Boling*, the government constructed a canal to make the Atlantic Intracoastal Waterway a continuous navigable channel.  *Id.* at 1368.  After construction of the waterway was completed, erosion by "waves created by boat traffic, the ebb and flow of the tide and other natural actions" began occurring almost immediately.  *Id.* at 1368–69.  In other words, a single governmental action—the construction of the waterway—set the stage for a series of naturally caused deleterious effects.

The facts alleged in this case do not fit this paradigm.  The government constructed the dam with an auxiliary spillway.  The damage by natural causes did not begin immediately by virtue of the construction of the dam and spillway.  The first release of water through the spillway caused the erosion (at least as alleged by the Plaintiffs).  The next release of water through the spillway caused further erosion—and so on.  This set of facts simply does not invoke the application of the stabilization doctrine because it does not call for fixing the moment when a taking claim accrues to a single government act that causes deleterious effects over an extended period of time.  Significantly, all the cases cited by the Government involve a single

---

[4] The Plaintiffs allege that there have been releases of water through the spillway in 2016 and 2017 as well.  *See* Pls.' Resp. at 6.

governmental act.  *See* Def.'s Mot. at 7–9 (citing *United States v. Dickinson*, 331 U.S. 745 (1947), *Mildenberger v. United States*, 643 F.3d 938 (Fed. Cir. 2011), *Boling*, 220 F.3d 1365 (Fed. Cir. 2000), and *Banks v. United States*, 741 F.3d 1268 (Fed. Cir. 2014)); Def.'s Reply at 5 (citing *Applegate v. United States*, 25 F.3d 1579 (Fed. Cir. 1994)).

And even if the Court were to try to apply the stabilization doctrine to the facts alleged in this case, it is unclear when the situation at Plaintiffs' property "stabilized" for purposes of accrual.  Upon the initial use of the auxiliary spillway in 1986, Plaintiffs noticed a "hole in the riverbank abutting [their] property."  Pls.' Resp. at 6.  Since then, the spillway has been operated 17 times and Plaintiffs have lost over eight acres of land to erosion.  Compl. at 5.  It was not until 2015 that Plaintiffs had to expend money to remediate the erosion.  It would seem, therefore, that 2015 was when "the consequence of inundation [had] so manifested themselves that a final account [could] be struck."  *See Applegate v. United States*, 25 F.3d 1579, 1582 (Fed. Cir. 1994).

Although Plaintiffs may have known about the existence of the erosion when they first began making inquiries in the 1990s, knowledge of erosion alone is insufficient to establish accrual under the stabilization doctrine.  Instead, "the touchstone for any stabilization analysis is determining when the environmental damage has made such substantial inroads into the property that the permanent nature of the taking is evident and the extent of the damage is foreseeable."  *Boling v. United States*, 220 F.3d 1365, 1372 (Fed. Cir. 2000).  As there is insufficient evidence to determine when the erosion had made "substantial inroads" into the property, dismissal of Plaintiffs' claim at this point would impose the "procedural rigidity" that the Supreme Court cautioned against.  *See United States v. Dickinson*, 331 U.S. 745, 749 (1947) ("When dealing with a problem which arises under such diverse circumstances procedural rigidities should be avoided.").

Moreover, the Corps' continuous refusal to address the erosion does not materially affect the analysis.  According to documents provided by the Government, Mr. Brown was informed that to undertake bank stabilization work on his own, "a Clean Water Act permit issued by the Corps" would be necessary and that "as part of that issuance process Corps personnel would be available to advise Mr. Brown . . . ."  Def.'s Mot., Ex. B (Email from Keith Francis, Corps, to Don Eckhoff, Congress).  As Plaintiffs were actively attempting to reverse the effects of the erosion and needed cooperation from the Corps to do so, it is not clear that the erosion was permanent or that a final account could be struck during this time.  *See Applegate*, 25 F.3d at 1582.

In sum, there is insufficient evidence at this time to determine when the situation at Plaintiffs' property stabilized.  Determining the point at which "stabilization" occurs is a factual inquiry.  *Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000); *see e.g., Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 32 (2012) ("most takings claims turn on situation-specific factual inquiries"); *Cooper v. United States*, 827 F.2d 762, 764 (Fed. Cir. 1987) ("The point at which the taking becomes sufficiently certain to give rise to a claim for compensation varies in each case.").  Until the evidentiary record is more fully developed, dismissal of Plaintiffs' claim would be to impose the "procedural rigidity" that the Supreme Court cautioned against.  *See United States v. Dickinson*, 331 U.S. 745, 749 (1947).

**IV.     CONCLUSION**

The continuing claims doctrine applies to this motion.  Each release of water through the spillway generates a discreet taking claim.  Accordingly, Defendant's Motion to Dismiss is **DENIED**.  Even if the stabilization doctrine were applicable, the Court would arrive at the same conclusion because of the factual determination that would be necessary to decide when stabilization had occurred.

The Government shall file its answer to Plaintiffs' complaint no later than May 14, 2019.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge
